```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

ROSE BARGAS,                       :
                                   :
    Plaintiff,                    :
                                   :
    v.                             :   CASE NO.  3:11cv1854(DFM)
                                   :
SUSAN B. GRIFFIN, NANCY            :
JANKOVSKY, and DAVID M.            :
BARGAS, as CO-PERSONAL             :
REPRESENTATIVES OF THE ESTATE      :
OF JOHN BARGAS, DECEASED,          :
                                   :
    Defendants.                   :

## MEMORANDUM OF DECISION

The plaintiff, Rose Bargas, brings this diversity action seeking to foreclose mortgages given to her by her now-deceased brother-in-law, John Bargas.  The defendants are Susan Griffin, Nancy Jankovsky and David Bargas, John Bargas's children and the co-representatives of the Estate of John Bargas.  They have filed counterclaims seeking discharge of the mortgages. (Doc. #11.)  The court held a bench trial in December 2012.[1]  Upon consideration of the arguments and evidence presented at trial and in the post-trial submissions, the court concludes that the plaintiff is entitled to foreclose the mortgages.  Pursuant to Fed. R. Civ. P. 52, following are the court's findings of fact and conclusions of law.

---

[1] The parties consented to the jurisdiction of the undersigned for all purposes, including trial, pursuant to 28 U.S.C. § 636(c). (Doc. #35.)  See Fed. R. Civ. P. 73.

I.  Findings of Fact

The plaintiff, Rose Bargas, is married to Chris Bargas, who is not a party. Chris Bargas had a younger brother, John Bargas, now deceased. In the 1980s, the brothers were involved in real estate development and, as a result, money flowed between them. (Tr. at 76.) At the heart of this case are loans totalling $580,000 the plaintiff Rose Bargas and her husband Chris made to John Bargas. (Doc. #30, Stip. ¶1.) John Bargas executed four demand notes payable to the plaintiff and secured them with mortgages as follows:

(1) On February 25, 1993, John Bargas executed a demand note in the amount of $400,000, with interest as provided in the note. (Doc. #37, Stip. ¶1.) To secure the note, John Bargas mortgaged to the plaintiff all of his right, title and interest in the property known as 10 Midwood Trail and North Trail, Stratford, Connecticut (the "Oronoque property").[2] (Doc. #37, Stip. ¶2.)

(2) Also on February 25, 1993, John Bargas executed a second demand note in the amount of $100,000, without interest. (Doc. #37, Stip. ¶4.) He secured the note with a mortgage to the Oronoque property. (Doc. #37, Stip. ¶5.)

(3) On March 15, 1993, John Bargas executed a third demand note in the amount of $50,000, with interest as provided in the

---

[2]John and Chris Bargas (with others) owned the Oronoque property. The property generated income for the owners.

note and again secured the note with a mortgage. (Doc. #37, Stip. ¶9.)

(4) On May 12, 1993, John Bargas executed a demand note in the amount of $30,000, with interest as provided in the note. (Doc. #37, Stip. ¶10.) Again, he secured the note by executing a mortgage to the plaintiff on the Oronoque property. (Doc. #37, Stip. ¶11.)

The plaintiff is the owner and holder of the notes and mortgages. (Doc. #37, Stip. ¶19.) The parties agree that the notes and mortgages were valid when made. (Doc. #30 at 10.) The mortgages were duly recorded in the Stratford land records. (Doc. #37, Stip. ¶¶3, 6, 9, 12.) The notes entitle the plaintiff to costs of collection and expenses, including attorney's fees, incurred by the plaintiff to collect the indebtedness due under the notes and in foreclosing the mortgage deeds securing the notes. (Doc. #37, Stip. ¶13.)

John Bargas did not make any payments of interest or principal on the notes. Over the years, he made various comments in which he acknowledged the debt and conceded that he had signed the notes and mortgages. See Tr. 58, 65-66, 83, 122. He never said that the notes or mortgages were invalid. (Tr. at 122, 134-35.) However, John Bargas was of the opinion that his brother Chris Bargas "owed" him more money than he owed Chris. (Tr. at 65, 83, 122.)

Meanwhile, Chris Bargas told his family that if he predeceased

3

his brother John, they should defer collecting the notes until John died because he wanted his brother, who was in poor health, to continue to receive income from the Oronoque property. (Tr. at 70, 71, 74.) Chris Bargas told his family not to interrupt the income stream to John "until [John] died and then collect the money from the estate." (Tr. at 72.)

John Bargas died on June 28, 2011. (Doc. #37, Stip. ¶14.) The defendants succeeded to John Bargas's interest in the property. (Doc. #37, Stip. ¶16.)

On October 7, 2011, the plaintiff demanded payment of the notes. (Doc. #37, Stip. ¶18.) No payment was made. (Doc. #37, Stip. ¶20.) In November 2011, the plaintiff filed this action seeking foreclosure of the four mortgages. The parties agree that if the court determines that the mortgages are enforceable, interest is due in accordance with the rates set forth in the notes. (Doc. #37, Stip. ¶22.) As of December 19, 2012, the mortgage debt was $1,277,874.90, plus costs and attorney's fees.

II. Conclusions of Law

A mortgage "is [a] conveyance of title to property that is given as security for the payment of a debt." Clark v. Clark, 115 Conn. App. 500, 505-06 (2009). "A mortgage is a separate instrument from the promissory note creating the debt, itself." Id. at 506. A mortgagee "is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage,

4

or to pursue both.  A note and a mortgage given to secure it are separate instruments, executed for different purposes and in [Connecticut] [an] action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit." Hartford National Bank & Trust Co. v. Kotkin, 185 Conn. 579, 581 (1981) (internal quotation marks omitted).

"A foreclosure action is an equitable proceeding." Deutsche Bank Nat. Trust Co. v. Angle, 284 Conn. 322, 326 (2007).  To make out a prima facie case, the plaintiff, as the foreclosing party, has to prove by a preponderance of the evidence that she is the owner of the notes and mortgages and that the mortgagor defaulted on the notes.  Webster Bank v. Flanagan, 51 Conn. App. 733, 750–51 (1999).  It is undisputed that the plaintiff is the owner of the notes and mortgages and no payments have been made on the notes.  Therefore, the plaintiff has established a prima facie case for foreclosure.

The defendants argue that the mortgages are unenforceable and should be discharged by virtue of Conn. Gen. Stat. § 49-13.

Conn. Gen. Stat. § 49-13, entitled "Petition for discharge of mortgage or of ineffective attachment, lis pendens or lien," provides in pertinent part:

> (a) When the record title to real property is encumbered (1) by any undischarged mortgage, and . . . (B) the promissory note or other written evidence of the indebtedness secured by the mortgage is payable on demand

5

and seventeen years have passed without any payment on account of such note or other written evidence of indebtedness . . . the person owning the property, or the equity in the property, may bring a petition to the superior court for the judicial district in which the property is situated, setting forth the facts and claiming a judgment as provided in this section. . . .

(c) Such notice having been given according to the order and duly proven, the court may proceed to a hearing of the cause at such time as it deems proper, and, if no evidence is offered of any payment on account of the debt secured by the mortgage within a period set out in subsection (a) of this section, or *of any other act within such a period as provided in said subsection (a) in recognition of its existence as a valid mortgage*, . . . the court may render a judgment reciting the facts and its findings in relation thereto and declaring the mortgage, foreclosure judgment, attachment, lis pendens or other lien invalid as a lien against the real estate . . . . (emphasis added.)

The defendants contend that § 49-13 applies here because (1) the notes were payable on demand and (2) seventeen years passed without any payment or "any other act . . . in recognition" of the existence of a valid mortgage. (Doc. #46 at 3.) The defendants argue that the evidence introduced at trial shows that John Bargas "did not act to recognize the subject mortgages as valid" and that as a result, "the court should declare the mortgages invalid." (Doc. #46 at 7.) The plaintiff responds that § 49-13 is not a defense to a foreclosure action where, as here, the parties dispute the invalidity of the mortgages and in any event, under the facts of this case, the statute does not apply. The court agrees.

Conn. Gen. Stat. § 49-13 is "not a Statute of Limitations." <u>Simonelli v. Fitzgerald</u>, 156 Conn. 49, 53 (1968). "The statute

does not declare that a mortgage upon which no payment has been made for a period of seventeen years or which has not been recognized as a valid mortgage within that period is unenforceable, but it gives the court the right to declare it invalid." Id. at 54.  The statute's purpose "is to provide a simple method whereby a mortgage, *the invalidity of which is undisputed*, may be declared invalid by the court and removed as a cloud on the title to the property."  Gordon v. Tufano, 188 Conn. 477, 483 (1982).  The statute does not give the court jurisdiction to determine the validity or invalidity of a disputed mortgage.  Id. (holding that the "trial court lacked jurisdiction to discharge the mortgage pursuant to § 49-13 because based on the evidence the validity of the mortgage was in dispute.")  See Simonelli v. Fitzgerald, 156 Conn. 49, 53-54 (1968) ("The statute [§ 49-13] gives the court no jurisdiction to determine the validity or invalidity of a disputed mortgage of long standing.")  "Where there is a controversy between the parties as to the validity and effect of a mortgage of this class, there are other ways of settling it. This statute is not applicable to such cases. . . . It authorizes an action in which affirmative relief may be granted if and only if the conditions specified in it are met."  Gordon, 188 Conn. at 483 (footnote omitted).  See Martino v. Scalzo, 113 Conn. App. 240, 249 n.7 (2009)("It is well settled that § 49-13 allows a court to remove a mortgage which is undisputed and does not empower a court to

7

determine the validity of a disputed mortgage. . . . "); Montfort v. Cilento, No. CV065000758S, 2007 WL 575438, at *2 (Conn. Super. Ct. Jan. 29, 2007) ("Where there is a mortgage of disputed validity, this court cannot use § 49-13 as a procedural vehicle to determine the validity or invalidity of the mortgage. Thus, if the holder of the mortgage appears and offers evidence that the mortgage is valid, this court is without authority to exercise the powers conferred by § 49-13."); Fountain Pointe, LLC v. Calpitano, No. CV106004936, 2011 WL 6989873, at *9 (Conn. Super. Ct. Dec. 20, 2011) ("Based upon the evidence presented, the validity of the mortgages is in dispute. The court is without jurisdiction to render judgment declaring the mortgages invalid pursuant to General Statutes § 49-31.")

Conn. Gen. Stat. § 49-13 does not apply because the validity of the mortgages is in dispute.  Under these circumstances, the defendants' attempt to declare the mortgages invalid pursuant to Conn. Gen. Stat. § 49-13 is unavailing.  See Gordon v. Tufano, 188 Conn. 477 (1982); Simonelli v. Fitzgerald, 156 Conn. 49 (1968).

Moreover, Conn. Gen. Stat. § 49-13 does not provide relief if there is evidence of "an act [within the seventeen year period] in recognition of its existence as a valid mortgage act."  Conn. Gen Stat. § 49-13(c).  The evidence adduced at trial demonstrates that John Bargas acknowledged the loans within the seventeen year period.   See Tr. 58, 65-66, 83, 122, 134-35.   This evidence

"sufficiently put into issue the continued validity of the mortgage so that § 49-13 cannot be relied upon to afford the [defendants] the relief [they] seek."  Gordon, 188 Conn. at 484.  In light of the record evidence, the court is without authority to discharge the mortgages under § 49-13 as the defendants request.

The defendant next argues that the plaintiff's claims are barred by the doctrine of laches.  (Doc. #46 at 11.)

"Because a mortgage foreclosure is an equitable proceeding . . . a defendant who is demonstrably prejudiced by a plaintiff's delay in filing a motion for a deficiency judgment may invoke the equitable defense of laches."  Baybank Connecticut, N.A. v. Thumlert, 222 Conn. 784, 791-92 (1992)(citation omitted).  "The determination of what equity requires in a particular case, the balancing of the equities, is a matter of discretion of the trial court."  Connecticut Community Bank, N.A. v. Six Hundred Twenty-Three Steamboat, LLC, No. FSTCV126013283, 2013 WL 1010646, at *4 (Conn. Super. Ct. Feb. 15, 2013).

The defense of "[l]aches consists of two elements.  First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant."  LaSalle National Bank v. Shook, 67 Conn. App. 93, 98-99 (2001).  See Cummings v. Tripp, 204 Conn. 67, 88 (1987) ("[L]aches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit. . . . Delay alone is not sufficient to bar a

right.") (citations omitted).  "The burden is on the party alleging laches to establish that defense. . . .  The mere lapse of time does not constitute laches . . . unless it results in prejudice to the [opposing party] . . . as where, for example, the [opposing party] is led to change his position with respect to the matter in question."  Jarvis v. Lieder, 117 Conn. App. 129, 149 (2009).

As to the first prong, the defendants claim that the plaintiff intentionally delayed making a demand on the notes and mortgages until after John Bargas died.  (Doc. #46 at 11.)  As to the second prong, the defendants argue that as a result of the delay, they are "handicapped in the defense of this action because John Bargas is not available to testify."  (Doc. #46 at 11-12.)

The record demonstrates that the plaintiff did not foreclose earlier because Chris Bargas wanted his brother, who was elderly and in poor health, to be able to enjoy the income stream from the Oronoque property.  Given this credible evidence, the court does not find the plaintiff's delay in commencing a foreclosure action "unreasonable" or "inexcusable."  Cummings v. Tripp, 204 Conn. 67, 88 (1987).  Moreover, the court is not persuaded that "the delay is 'unduly prejudicial' to the defendant[s]."  Id.

III. Conclusion

The plaintiff is entitled to foreclose the mortgages (counts 1-4).  The parties agree that the plaintiff is entitled to interest in accordance with the rates set forth in the notes and costs and attorney's fees incurred to foreclose the mortgages.  (Doc. #37, Stip. ¶22.)  The parties are encouraged to calculate these figures

and come to an agreement on their own. The parties also shall attempt to resolve the method of foreclosure and to draft a proposed judgment. A telephonic status conference is scheduled for June 28, 2013 at 11:15 a.m.

SO ORDERED this 24th day of May 2013, at Hartford, Connecticut.

/s/
Donna F. Martinez
United States Magistrate Judge